# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

**No. 23-13531**

**ROY STEWART MOORE,**

*Plaintiff-Appellee,*

v.

**SENATE MAJORITY PAC,**

*Defendant-Appellant.*

## APPELLEE ROY S. MOORE'S MOTION TO STAY THE MANDATE PENDING PETITION FOR WRIT OF CERTIORARI

## <u>INTRODUCTION</u>

Pursuant to Fed. R. App. P. 41(d)(1) and 11th Cir. R. 41-1, Appellee Roy S. Moore respectfully moves this Court to stay issuance of its mandate pending his filing of a petition for a writ of certiorari in the United States Supreme Court. The Court issued its opinion on April 24, 2026, reversing the district court and remanding with instructions to enter judgment for Appellant Senate Majority PAC ("SMP"). The mandate has not yet issued.

This motion satisfies Rule 41(d)(1)'s two requirements: the petition will present substantial federal constitutional questions, and good cause exists for a stay. Filing this motion defers issuance of the mandate because under Rule 41(b), the mandate must issue seven days after entry of an order denying the motion — meaning the Court must first act before the mandate may issue. *See* Fed. R. App. P. 41(b). A stay granted by this Court remains in effect for up to ninety days; if Moore files his petition within that period, the stay continues until the Supreme Court's final disposition. *See* Fed. R. App. P. 41(d)(2)(B)(ii). Moore intends to file within the ninety-day period prescribed by Sup. Ct. R. 13.1, running from April 24, 2026, and expiring July 23, 2026.

## <u>LEGAL STANDARD</u>

Fed. R. App. P. 41(d)(1) permits a party to move to stay the mandate pending filing of a certiorari petition. The motion must be served on all parties and must show that the petition presents a substantial question and that good cause exists for a stay.

11th Cir. R. 41-1 requires a specific showing that the motion is genuine and not filed merely for delay. A stay is warranted where the movant demonstrates, as Moore does here, that the certiorari petition will present a substantial question and that good cause exists for the relief requested. Both requirements are satisfied.

If this Court denies a stay, Moore may apply to the appropriate Circuit Justice under Sup. Ct. R. 23, which requires a reasonable probability that four Justices will

grant certiorari and a fair prospect of reversal. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). Moore is prepared to pursue that alternative if necessary but respectfully submits that this Court should grant the stay in the first instance.

A stay of mandate serves the fundamental purpose of preserving the status quo and preventing a judgment from taking irreversible effect while a petition presenting substantial constitutional questions is under consideration. As the Advisory Committee Notes to Rule 41 recognize, "[t]he Supreme Court has established conditions that must be met before it will stay a mandate," and Rule 41(d)(1)'s two-part showing is calibrated to those conditions. Fed. R. App. P. 41 advisory committee's note to 1994 amendment (citing Robert L. Stern et al., Supreme Court Practice § 17.19). Both conditions are met here.

## ARGUMENT

## I. MOORE'S PETITION WILL PRESENT SUBSTANTIAL FEDERAL CONSTITUTIONAL QUESTIONS.

A substantial question under Rule 41(d)(1) is one presenting an important federal constitutional issue that the Supreme Court might plausibly wish to resolve, including questions on which circuit courts have reached conflicting decisions or that have not yet been settled by the Supreme Court. *See* Sup. Ct. R. 10(a), (b). Moore's petition will present three such questions, each of which independently satisfies this standard.

**A. Whether the First Amendment Requires a Two-Part Actual Malice Test for Defamation-by-Implication Claims.**

The panel held, as a matter of first impression in this Circuit, that a public-figure plaintiff proceeding on a defamation-by-implication theory must prove not only (1) that the defendant knew the implied statement was false or recklessly disregarded its falsity, but also (2) that the defendant intended to communicate the defamatory meaning or acted with reckless disregard for the defamatory implication. *Moore*, slip op. at 34 (citing *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90-91 (3d Cir. 2013)).

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), defines actual malice to require that a public official prove the defamatory statement "was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-80. The Supreme Court imposed two elements, not three. The additional "intent to communicate the defamatory meaning" requirement adopted by the panel — and by the First, Third, Sixth, and Seventh Circuits — has never been endorsed by the Supreme Court, which has not addressed whether this extra element is constitutionally required, permissible, or forbidden. This unresolved circuit conflict on a question of constitutional significance presents precisely the kind of substantial question that warrants certiorari.

**B. Whether Bose's Independent Appellate Review Permits a Court to Vacate a Jury's Actual Malice Verdict Based on Rejection of Defense Witness Testimony.**

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984), requires independent appellate review of defamation verdicts to ensure the actual malice standard is properly applied. But the Court was explicit: "[t]his rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge." 466 U.S. at 501. Critically, independent review does not displace the jury's credibility determinations. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 690 (1989) (conducting independent review while according the jury's credibility determinations "the special deference to which they are entitled").

The panel acknowledged that the jury rejected every SMP witness who testified about the ad's intent, and acknowledged the jury was entitled to do so. *Moore*, slip op. at 37-38. Yet despite that rejection, the panel concluded that the combined evidence — the jury's credibility findings, the content of the ad, SMP's editorial choices, and SMP's refusal to retract — was insufficient to establish actual malice by clear and convincing evidence. *Id.* at 38-44. This approach effectively nullifies the jury's factfinding role whenever a defendant presents good-faith

testimony that the jury disbelieves, and it stands in direct tension with the Supreme Court's approach in *Harte-Hanks*, which affirmed a jury's actual malice verdict under identical *Bose* review by giving meaningful weight to exactly those credibility determinations.

**C. Whether *Masson*'s Material-Change-in-Meaning Standard Extends to Deliberate Juxtaposition of Accurate Quotes from Separate Sources.**

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), held that a publisher who deliberately alters material in a way that "results in a material change in the meaning conveyed by the statement" may be found to have acted with actual malice. 501 U.S. at 517. The panel limited this principle to single-source verbatim alterations, holding that "unlike in *Masson*, Moore's claims do not turn on the alteration of direct quotes from the news reports on which SMP relied. *Masson* is thus inapposite." *Moore*, slip op. at 41.

This holding creates a structural immunity for a sophisticated and increasingly prevalent form of deliberate defamation: the composite juxtaposition technique. Under the panel's reading, a publisher who alters a single source's words may be held liable under *Masson*, but a publisher who takes accurate quotes from two sources and assembles them into a composite conveying a false meaning neither source ever stated cannot be. The distinction has no basis in *Masson's* reasoning, which focused on the deliberate creation of a materially false statement, not the number of sources

used. Whether *Masson* extends to this scenario is a question of first impression in the Supreme Court with significant practical implications for political advertising and First Amendment defamation law.

## II. GOOD CAUSE EXISTS TO STAY THE MANDATE.

### A. A Stay Preserves the Status Quo and Protects Moore's Right to Seek Review.

The fundamental purpose of a stay of mandate pending certiorari is to preserve the status quo while a party exercises the right to seek Supreme Court review. Courts weigh four factors in evaluating stay applications: (1) whether the applicant has made a showing of likely success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the stay will substantially injure other parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). As shown throughout this motion, all four factors favor Moore.

If the mandate issues before Moore files and the Supreme Court acts on his petition, the district court will be immediately directed to enter judgment for SMP, the jury's $8.2 million verdict will be erased, and the practical consequences of that reversal will take hold before the Court has had the opportunity to determine whether the Eleventh Circuit's novel constitutional standards are correct. A stay prevents exactly this outcome. Moore intends to file before July 23, 2026, and under Fed. R.

App. P. 41(d)(2), the stay expires automatically when the Supreme Court acts; either immediately upon denial or upon final disposition if certiorari is granted.

**B. Moore Will Suffer Irreparable Harm If the Mandate Issues.**

Absent a stay, the district court will be directed to enter judgment for SMP and vacate the jury's $8.2 million verdict, an outcome that cannot be undone after the fact if the Supreme Court grants certiorari and reverses. The reputational harm of replacing a jury verdict finding that SMP published the Shopping Mall Ad with actual malice, a finding the district court independently confirmed with a judgment in Moore's favor is irreversible in the immediate term and cannot be fully compensated by any subsequent legal relief.

The pendency of SMP's Bill of Costs (Doc. 51) compounds this harm. If the mandate issues, the cost award will be embedded in the mandate and directed to the district court for execution. SMP has claimed $3,257.57 in costs and the matter remains subject to Moore's pending objections. Requiring Moore to simultaneously litigate cost objections, satisfy an executed cost award, and pursue certiorari on the merits of a constitutional question imposes compounding procedural and financial burdens that a stay would entirely prevent. The stay holds all of these consequences in abeyance for the bounded period of the certiorari process precisely what it is designed to do.

**C. SMP Will Suffer No Cognizable Prejudice From a Stay.**

A stay of the mandate imposes no cognizable prejudice on SMP. SMP is a national political action committee that spent $574,754 broadcasting the Shopping Mall Ad approximately 533 times in the final days of the 2017 Alabama Senate election. *Moore*, slip op. at 8. An organization of that scale and sophistication is not prejudiced by a temporary deferral of the entry of a favorable judgment while the losing party exercises its constitutional right to seek Supreme Court review. The stay is bounded: Moore must file within 90 days of April 24, 2026. If he does not file, the stay expires automatically and the mandate issues. SMP loses nothing by waiting for a process that, if it results in denial of certiorari, ends promptly.

SMP, moreover, has had the benefit of a favorable Eleventh Circuit ruling since April 24, 2026. Its position is not at risk during the stay period; it simply does not yet have the benefit of an entered judgment. That temporary deferral of a procedural benefit — entry of judgment — does not constitute the kind of substantial prejudice that counsels against a stay. There is no ongoing obligation, no continuing harm, and no irreversible consequence to SMP from maintaining the status quo during the certiorari process.

**D. The Public Interest Strongly Favors a Stay.**

There is a compelling public interest in allowing the Supreme Court to resolve the constitutional questions this case presents before the Eleventh Circuit's novel standards become embedded judgments in the courts below. The actual malice

standard, born in Alabama in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), is the cornerstone of First Amendment protection for political speech and press freedom. The Eleventh Circuit's adoption of a two-part intent requirement for defamation-by-implication cases, a standard the Supreme Court has never endorsed, creates inconsistent constitutional rules for identical conduct depending solely on the federal circuit in which a case is litigated. Political advertising increasingly employs composite juxtaposition techniques of the kind at issue here. The absence of uniform constitutional standards governing actual malice in such cases has real consequences for political candidates, public officials, and media organizations across the country. If publishers may achieve through strategic juxtaposition what they cannot achieve through direct quote manipulation and escape liability under the First Amendment in doing so, the constitutional balance Sullivan struck between free expression and reputational protection is fundamentally disrupted for one of the most consequential categories of speech: political advertising in the midst of contested elections.

The public also has a direct interest in the proper functioning of the jury trial right in defamation cases. If independent appellate review under Bose permits courts of appeals to override jury credibility findings whenever a defendant presents good-faith witnesses the jury disbelieved, the Seventh Amendment guarantee of jury trial is substantially diluted in a significant category of civil litigation.

Allowing the Supreme Court to address the boundaries of Bose review before more judgments are entered under the panel's approach serves the interests of litigants and courts across the country, not just the parties to this case. A stay of the mandate for the duration of the certiorari process is a modest and appropriate measure to protect those interests.

## III. DURATION OF THE STAY.

Moore requests a stay of 90 days from April 24, 2026, consistent with Fed. R. App. P. 41(d)(2) and Sup. Ct. R. 13.1. If Moore files a timely petition and so notifies the Clerk of this Court in writing, the stay will continue automatically until the Supreme Court's final disposition under Fed. R. App. P. 41(d)(2)(B)(ii). If Moore does not file within the 90-day period, the stay expires automatically and the mandate issues. Moore does not request a bond or other security as a condition of the stay under Fed. R. App. P. 41(d)(3); the stay is limited to the mandate and does not affect any ongoing financial obligations.

## <u>CONCLUSION</u>

For these reasons, Roy S. Moore respectfully requests that this Court stay the mandate pending the filing and final disposition of his petition for writ of certiorari. The petition will present three substantial federal constitutional questions on which the circuits are divided and on which the Supreme Court has not spoken. Good cause exists: Moore faces irreparable harm if the mandate issues; SMP faces no cognizable

prejudice from a brief stay; and the public interest in uniform, constitutional standards for actual malice in political defamation cases strongly favors allowing the Court to exercise its jurisdiction before the Eleventh Circuit's novel standards take irreversible effect below. The stay should remain in effect until the Supreme Court denies certiorari or, if certiorari is granted, until the Court's final disposition of the case.

Respectfully submitted,

/s/ Jeffrey M. Wittenbrink
**Jeffrey S. Wittenbrink**
WITTENBRINK LAW FIRM
331 St. Ferdinand Street
Baton Rouge, Louisiana 70802
La. Bar Roll No. 18511
*Counsel for Appellee Roy S. Moore*

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2026, I electronically filed the foregoing Motion to Stay the Mandate Pending Petition for Writ of Certiorari with the Clerk of the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Appellant Senate Majority PAC.

/s/ Jeffrey S. Wittenbrink
Jeffrey S. Wittenbrink

IN THE UNITED STATES COURT OF APPEALS<br>FOR THE ELEVENTH CIRCUIT

No. 23-13531

ROY STEWART MOORE,
Plaintiff-Appellee,
versus
SENATE MAJORITY PAC,
Defendant-Appellant.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), counsel for Appellee Roy S. Moore hereby certifies that Appellee's Motion to Stay the Mandate Pending Petition for Writ of Certiorari complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,539 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

The motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

BY ATTORNEYS:

Wittenbrink Law Firm
331 St. Ferdinand Street
Baton Rouge, LA 70802
Telephone: (225) 308-6850
email: jwittenbrink@TheLawyerBR.com

By:__*/s/ Jeffrey S. Wittenbrink*_____
Jeffrey S. Wittenbrink #18511
*Attorney for Appellee Roy S. Moore*