# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Roy S. Moore,

*Plaintiff-Appellee*,

v.

Senate Majority PAC,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 4:19-cv-01855-CLM

## APPELLANT SENATE MAJORITY PAC'S RESPONSE IN OPPOSITION TO MOTION TO STAY THE MANDATE

Barry Alan Ragsdale
**Dominick Feld Hyde, PC**
1130 22nd St. South, Suite 400
Birmingham, AL 35205
Telephone: (205) 536-8888
bragsdale@dfhlaw.com

Abha Khanna
William B. Stafford
**Elias Law Group LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0176
akhanna@elias.law
bstafford@elias.law

Marc E. Elias
Christina Ford
**Elias Law Group LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
eliasm@elias.law
cford@elias.law

*Counsel for Appellant*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

RELEVANT BACKGROUND ............................................................................4

LEGAL STANDARD...........................................................................................5

ARGUMENT ........................................................................................................6

   I.   Moore's petition will not present any substantial question...........................6

      A.   There is no conflict among circuit courts regarding defamation-by-implication claims. ...............................................................................7

      B.   Moore's contention that the panel supposedly misapplied *Harte-Hanks* does not present a substantial question. ..........................9

      C.   Moore's assertion that the panel's decision is inconsistent with *Masson* does not present a substantial question.................................11

      D.   The Supreme Court is particularly unlikely to grant certiorari in this case. ...................................................................................13

   II.   Moore fails to demonstrate good cause for a stay. .......................................15

      A.   Moore will not be irreparably injured absent a stay...........................16

      B.   A stay of the mandate will prejudice SMP and is not in the public interest. ..................................................................................18

   CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Flowers*,
330 U.S. 464 (1947)...................................................................................17

*Air Wis. Airlines Corp. v. Hoeper*,
571 U.S. 237 (2014)...................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................10

*Bertrand v. Mullin*,
574 U.S. 934 (2014).....................................................................................9

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984)...................................................................................10

*Conkright v. Frommert*,
556 U.S. 1401 (2009)...................................................................................6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)................................................................................9, 10

*Kendall v. Daily News Publ'n Co.*,
716 F.3d 82 (3d Cir. 2013) ...........................................................................8

*Lovingood v. Discovery Commc'ns, Inc.*,
590 U.S. 960 (2020)...................................................................................13

*Lovingood v. Discovery Commc'ns, Inc.*,
800 F. App'x 840 (11th Cir. 2020) .......................................................... 12, 13

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991)............................................................................... 11, 12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).....................................................................................8

*Sampson v. Murray*,
415 U.S. 61 (1974)......................................................................................17

*Sockwell v. Comm'r, Ala. Dep't of Corrs.*,
No. 23-13321, 2025 WL 2741439 (11th Cir. Sept. 23, 2025)................... 6, 16, 18

*Triangle Constr. & Maint. Corp. v. Our V.I. Lab. Union*,
425 F.3d 938 (11th Cir. 2005) .......................................................................18

*United States v. Silver*,
954 F.3d 455 (2d Cir. 2020) ............................................................................6

**Rules**

Fed. R. App. P. 39(f)(3)..................................................................................19

Fed. R. App. P. 41(d)(1)...................................................................................6

**Other Authorities**

9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
4036 (3d ed. Apr. 2026)...........................................................................17

**INTRODUCTION**

On April 24, 2026, a panel of this Court unanimously held that Roy Moore failed to show clear and convincing evidence that Senate Majority PAC ("SMP") acted with actual malice when it aired a political advertisement summarizing the prolific and credible reporting accusing Roy Moore of sexual misconduct with girls as young as 14 years old. The panel reached that conclusion after conducting its own "independent examination of the whole record" to "determine whether the record establishes actual malice with convincing clarity," as required under well-established and long-standing U.S. Supreme Court precedent. Op. at 24 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508, 514 (1984)).

Moore's motion to stay the mandate pending his forthcoming petition for certiorari to the U.S. Supreme Court should be denied. A stay is a limited and rare exception to the rule that the mandate issues as a matter of course; to be entitled to one, Moore must show he will present the U.S. Supreme Court with a "substantial question" (a high bar) *and* that he will suffer irreparable injury in the absence of the stay of the mandate. Moore has shown neither.

To start, Moore has failed to demonstrate that any of the three issues set out in his motion constitutes a substantial question where there is any realistic probability that the U.S. Supreme Court will grant certiorari and reverse the panel's opinion. Moore argues, for example, that this case raises an "unresolved circuit

1

conflict" regarding the legal standards governing defamation-by-implication claims, Mot. at 4, but this case does no such thing. As the panel noted, and Moore himself acknowledges, in reaching its opinion the Court *joined* the First, Third, Sixth, and Seventh Circuits in requiring plaintiffs in defamation-by-implication cases to show clear and convincing evidence of the defendant's intent to communicate a defamatory message. Op. at 33–35. No circuit has held otherwise, meaning this case does not present a "circuit conflict," but the exact opposite: circuit consensus.

Moore's other proposed "substantial questions" present nothing more than Moore's belief that the panel misapplied existing U.S. Supreme Court precedents. *See* Mot. at 5–7 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989), and *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)). Moore is wrong on the merits, as neither opinion compelled the panel to rule in his favor. But even if Moore were correct, that would not present a substantial question to the U.S. Supreme Court. *See* Sup. Ct. R. 10 ("A petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law."). In any event, the U.S. Supreme Court would be unlikely to take Moore's case when multiple, independent grounds exist to support the Court's judgment in favor of SMP.

Moore's motion should also be denied for the independent reason that Moore has failed to show a likelihood of irreparable injury in the absence of a stay. This

case may concern Roy Moore's reputation—or what is left of it—but Moore's reputation will not be "irreparably harmed" if the mandate issues. Any harm to Moore's reputation is a result of his own predatory behavior towards young girls, the extensive reporting on that behavior, and to a much lesser extent, the panel's opinion that *already* issued describing that behavior in further detail. Staying the mandate does not vitiate the existence of the panel's opinion. If Moore's reputation rises and falls with the issuance of judicial opinions, then in the extremely unlikely event that the U.S. Supreme Court accepts this case and reverses the panel opinion, Moore's reputation can be "restored" then. Whether the mandate issues will have no effect on that outcome.

Meanwhile, a stay of the mandate would prejudice SMP, which was required—at Moore's insistence—to post an $8.2 million bond to secure the judgment pending appeal. A stay of the mandate would almost certainly preclude SMP's ability to have the district court release the bond, which has required SMP to pay over $320,000 in bond premiums since 2022 and will require another $82,000 in premiums in the forthcoming months if the bond is not terminated.

In short, in light of the high bar required to stay the mandate, Moore's failure to satisfy any of the requirements for a stay, and the harm that a stay will cause to SMP, this Court should deny Moore's motion.

**RELEVANT BACKGROUND**

Moore brought this lawsuit in November 2019 against numerous defendants, including SMP. In his complaint, Moore alleged that SMP and other defendants had defamed him in a variety of statements, including in one particular advertisement. *See* Doc. 1.[1] That Ad quoted directly from five pieces of public reporting regarding Moore's improper conduct toward young women. *See* Op. at 8–11.

Over the course of the case, most of Moore's claims were dismissed. The district court, however, let Moore proceed to trial against SMP based on a single, narrow theory: that two frames of the Ad, when "juxtaposed together back-to-back," created "a new message that was false and defamatory." *Id.* at 13 n.6. Such a theory, where a defendant allegedly "juxtaposes a series of facts to imply a defamatory connection between them," is known as "defamation by implication." *Id.* at 33 (quoting 50 Am. Jur. 2d *Libel and Slander* § 161). At the conclusion of trial, in August 2022, the jury found SMP liable and awarded Moore $8.2 million in damages. *See* Doc. 207.

SMP requested that the district court stay execution of that judgment pending appeal without requiring SMP to post a bond. *See* Doc. 215. Moore opposed that request, however, and the district court set the bond at $8.2 million. *See id*; Doc.

---

[1] Citations to "Doc." are to the district court's docket in this case of *Moore v. Senate Majority PAC*, No. 4:19-cv-01855 (N.D. Ala.).

218. Accordingly, SMP executed a supersedeas bond of $8.2 million in October 2022, *see* Doc. 235, and, for each of the four years since then, has paid premiums of $82,000 each year to secure the judgment.

Following the jury's verdict, SMP filed a renewed motion for judgment as a matter of law, Doc. 216, which the district court denied, Doc. 252. SMP then appealed to this Court. On April 24, 2026, this Court issued its ruling. The panel first concluded—as the First, Third, Sixth, and Seventh Circuits have held—that a plaintiff in a defamation-by-implication case "must show by clear and convincing evidence not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant 'inten[ded] to communicate the defamatory meaning' or recklessly disregarded the defamatory meaning." Op. at 34 (alteration in original) (citation omitted). It then went on to hold, based on an independent review of the whole record, that Moore failed to present adequate evidence that SMP intended or recklessly disregarded the Ad's supposedly defamatory implication. *See id.* at 36–44. Accordingly, the panel vacated the jury's verdict, reversed the denial of SMP's motion for judgment as a matter of law, and remanded with instructions to enter judgment in SMP's favor. *Id.* at 28–29, 44.

## LEGAL STANDARD

A motion to stay the mandate pending a petition for a writ of certiorari must be denied unless the movant demonstrates "the petition would present a substantial

question and that there is good cause for a stay." Fed. R. App. P. 41 (d)(1). To present a "substantial question," the movant must demonstrate "a 'reasonable probability' that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction" and "a fair prospect that a majority of the Court will conclude that the decision below was erroneous." *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers) (quoting *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (Brennan, J., in chambers)); *see, e.g.*, *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020) (similar). And to establish "good cause" for a stay of the mandate, "there must be a likelihood of irreparable harm if the judgment is not stayed." *Sockwell v. Comm'r, Ala. Dep't of Corrs.*, No. 23-13321, 2025 WL 2741439, at *1 (11th Cir. Sept. 23, 2025) (quoting *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers)). A court may also "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Conkright*, 556 U.S. at 1402 (quoting *Rostker*, 448 U.S. at 1308).

## ARGUMENT

### I.      Moore's petition will not present any substantial question.

Moore's motion fails because he has not shown that his petition will present a "substantial question." Fed. R. App. P. 41 (d)(1). "[T]he standard for presenting a 'substantial question' is high." *Silver*, 954 F.3d at 458. The likelihood that the U.S. Supreme Court will either grant certiorari or ultimately reverse on any of the three

legal issues that Moore sets forth in his motion is miniscule. And there are numerous additional reasons why the Supreme Court is highly unlikely to grant certiorari, even leaving aside the merits of the legal issues.

**A.      There is no conflict among circuit courts regarding defamation-by-implication claims.**

Moore's effort to manufacture a nonexistent conflict with respect to the requirements to show actual malice in a defamation-by-implication case falls flat. The panel's opinion held that, in a defamation-by-implication case, a plaintiff must show "not only (1) that the defendant knew of or recklessly disregarded the falsity of the implied defamatory statement, but also (2) that the defendant 'inten[ded] to communicate the defamatory meaning' or recklessly disregarded the defamatory meaning." Op. at 34 (alteration in original) (quoting *Kendall v. Daily News Publ'n Co.*, 716 F.3d 82, 90 (3d Cir. 2013)). As Moore acknowledges, this same requirement has previously been adopted by the First, Third, Sixth, and Seventh Circuits. *See* Mot. 4; Op. at 33–35 (first citing *Kendall*, 716 F.3d at 90–91; then citing *Compuware Corp. v. Moody's Invs. Servs.*, 499 F.3d 520, 526, 528–29 (6th Cir. 2007); then citing *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002); and then citing *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1317–18 (7th Cir. 1988)).

Such a requirement makes good sense and is consonant with basic principles of defamation law. As the panel noted, "[u]nlike in express defamation cases, 'in defamation-by-implication cases, showing known falsity [of the implication] alone

7

is inadequate to establish an intent to defame' because the challenged statement 'has defamatory and nondefamatory meanings.'" Op. at 33 (alteration in original) (quoting *Kendall*, 716 F.3d at 90). As a result, courts "may no longer presume with certainty that the defendants knew they were making a defamatory statement," and plaintiffs in defamation-by-implication cases "must show something that establishes defendants' intent to communicate the defamatory meaning." *Kendall*, 716 F.3d at 90. It is thus unsurprising that every circuit to have considered the issue has reached the same conclusion as the panel here.

Moore, perplexingly, describes this clear consensus of five circuit courts against zero as an "unresolved circuit conflict." Mot. at 4. He cites no authority holding that any court has ever rejected this understanding or come to a contrary conclusion. His only argument is that these five courts have supposedly added a requirement that was not present in the Supreme Court's articulation of the actual malice standard in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *See* Mot. at 4. But *Sullivan* was not a defamation-by-implication case. *Sullivan* held that a public official may not recover for defamation "relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *See* 376 U.S. at 279–80. The panel here—like all other circuits—simply found that a plaintiff in a defamation-by-implication case does not meet this burden to satisfy the *Sullivan*

standard without a showing of the defendant's intent regarding the defamatory meaning. In short, the panel's decision does not conflict with any decision of the U.S. Supreme Court or any other court, and the Supreme Court is thus highly unlikely to grant certiorari here. *See* Sup. Ct. R. 10; *see also* Pet. for a Writ of Certiorari at 22, *Bertrand v. Mullin*, No. 14-190 (Aug. 14, 2014), 2014 WL 4059929, at *22 (asking Supreme Court to grant petition for certiorari to "revisit and clarify the *N.Y. Times* standard as it relates to 'defamation by implication' cases"); *Bertrand v. Mullin*, 574 U.S. 934 (2014) (mem.) (denying that petition).

### B. Moore's contention that the panel supposedly misapplied *Harte-Hanks* does not present a substantial question.

Moore's second proposed question fares no better. While his description of the question is difficult to parse, Moore appears to contend that the panel misapplied the Supreme Court's decision in *Harte-Hanks* in holding that Moore had failed to provide sufficient evidence of actual malice as a matter of law. *See* Mot. at 5–6. That falls well short of the demanding standards required for certiorari. *See* Sup. Ct. R. 10 ("A petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law.").

Moore is also wrong to suggest that there is any inconsistency between the panel's decision and *Harte-Hanks*. The Supreme Court in *Harte-Hanks* reiterated, as it had first held in *Bose*, that courts have "a constitutional duty to 'exercise

independent judgment and determine whether the record establishes actual malice with convincing clarity.'" *Harte-Hanks*, 491 U.S. at 659 (quoting *Bose*, 466 U.S. at 514). The *Harte-Hanks* Court then clarified that, in the process of conducting this independent review, a jury's "credibility determinations are reviewed under the clearly-erroneous standard" and an appellate court will defer to such determinations that a jury "*must* have" made. *Id.* at 688, 690. That is exactly what the panel did. The panel expressly concluded that the jury must have found the SMP witnesses' testimony about what they intended the Ad to communicate to not be credible, and held that it "must give these credibility findings deference as SMP has not shown they are clearly erroneous." Op. at 37–38 (citing *Harte-Hanks*, 491 U.S. at 690).

All that is left, then, is Moore's bare disagreement with the panel's conclusion that Moore failed to present adequate evidence of actual malice. *See* Mot. at 5–6; Op. at 36–44. But whether a court is required to defer to a jury's credibility determinations—as the panel did here—is an entirely separate question from whether such determinations by themselves constitute sufficient evidence of actual malice. They do not; to the contrary, a libel plaintiff "must present affirmative evidence" supporting the inference that a defendant published with knowledge or reckless disregard of the statement's falsity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *see also Bose*, 466 U.S. at 512 ("Normally the discredited testimony [of a witness] is not considered a sufficient basis for drawing a contrary

10

conclusion."). Nothing in *Harte-Hanks* is to the contrary or required the panel to affirm a finding of actual malice here. There is thus no reason to think the Supreme Court is likely to grant certiorari to address the panel's fact-bound application of agreed-upon legal principles, or to reverse if it somehow did.

**C.** **Moore's assertion that the panel's decision is inconsistent with *Masson* does not present a substantial question.**

Finally, Moore is also incorrect in asserting that there is any inconsistency between the panel's decision and the Supreme Court's decision in *Masson*. *See* Mot. at 6–7. *Masson* was a wildly different case from this one, for several reasons. *First*, in *Masson*, the reporter fabricated entire, lengthy statements supposedly made by the subject of her story, despite having recorded many hours of taped interviews with her subject, where none of those quotations were ever uttered. *See* 501 U.S. at 502–08. Here, as the panel noted, SMP did not alter any quotes and accurately cited the original source articles in each instance. Op. at 41. *Second*, SMP included citations to the original source materials on each slide of its Ad, meaning that viewers were able to compare SMP's Ad to the articles in question and judge for themselves whether they believed SMP was accurately describing the source material. *See id.* That was of course impossible in *Masson*, where the reporter presented the quoted material as fact based on her *own* interviews with the subject, thus "eliminating any method of distinguishing between the statements of the subject and the interpretation of the author." 501 U.S. at 520. *Third*, in *Masson*, the Supreme Court—evaluating

the case in a summary-judgment posture—concluded that, when viewed in the light most favorable to the plaintiff, there was evidence supporting a determination that the reporter had deliberately altered the quotations at issue. *See id.* at 509, 517. In contrast, no such evidence was ever presented here. To the contrary, SMP's witnesses repeatedly testified that their intent was not to create a new story—it was to share stories that were already in the public domain with the general public. Appellant Br. 18.

The panel thus correctly recognized that *Masson* did "not compel the conclusion that the ad itself demonstrates actual malice" here. Op. at 41. That is entirely consistent with this Court's prior case law, in which this Court has rejected attempts to apply *Masson* even where a defendant *has* altered a plaintiff's speech. In *Lovingood v. Discovery Communications, Inc.*, in evaluating a film about the space shuttle *Challenger*, this Court held that "the mere fact that the film contains altered historical dialogue is not, in itself, evidence that Discovery made statements with knowledge that they were false, for purposes of the *New York Times* standard." 800 F. App'x 840, 848 (11th Cir. 2020) (per curiam). Instead, this Court considered Discovery's vetting of the broadcast and the context in which it was aired in holding that Discovery had not acted with actual malice. *Id.* at 847–49. Because the "record contains no evidence at all that Discovery knew that the lines spoken by the Lovingood character in the film were false," this Court held that the case was "not

like *Masson*" and affirmed the grant of summary judgment in Discovery's favor based on a lack of actual malice. *Id.* at 849–51.

Notably, the U.S. Supreme Court subsequently denied the plaintiff's petition for a writ of certiorari in *Lovingood*. *See Lovingood v. Discovery Commc'ns, Inc.*, 590 U.S. 960 (2020) (mem.). And just as in *Lovingood*, Moore has failed to show that *Masson* compelled a different outcome here. He does not cite any authority applying *Masson* to a situation where a defendant accurately reproduces quotations and cites back to the original source material—or any authority interpreting *Masson* at all, for that matter. Mot. at 6–7. His bare contention that the panel misapplied *Masson* once again does not constitute a substantial question. *See* Sup. Ct. R. 10. Nor has he shown that this case presents a recurring question of significance that the U.S. Supreme Court is likely to consider worthy of certiorari. To the contrary, his blithe assertion that the "composite juxtaposition technique" of combining two accurate quotes into one false statement is "increasingly prevalent" is pure *ipse dixit*, entirely free of any evidence or citation. Mot. at 6. The Supreme Court is thus highly unlikely to view this as a substantial question that is worthy of its review.

D. **The Supreme Court is particularly unlikely to grant certiorari in this case.**

Even if Moore's forthcoming petition *had* identified a "substantial question" for the Court—which it has not—the Supreme Court would still be unlikely to grant certiorari in his case because multiple, independent grounds exist to support the

Court's judgment in favor of SMP. In particular, each of Moore's alleged "substantial questions" concerns the legal issue of whether Moore had to prove, or did prove, that SMP had the *intent* to communicate an alleged defamatory meaning. But as the Eleventh Circuit recognized, even if Moore prevailed on the issue of SMP's intent, Moore still cannot prevail in this case unless he can also prove, "by clear and convincing evidence," that "SMP knew the implied statement in the ad was false or SMP recklessly disregarded its falsity (the falsity component of actual malice) . . ." Op. at 35. Although the Court did not reach that issue because Moore's failure to establish clear and convincing evidence of SMP's intent to communicate a defamatory meaning was sufficient to resolve the case in SMP's favor, *see* Op. at 44 n.20, the Court's summary of the evidence presented at trial all but forecloses any relief for Moore on this ground. In particular, the Court cited the unanimous testimony of those involved in the Ad's preparation that they believed the Ad communicated truthful information, *see* Op. at 14–18, as well as SMP's efforts to fact-check and verify the Ad's truthfulness before publication, *see* Op. at 16–18; *see also* Op. at 43 ("SMP's thorough vetting process is inconsistent with and belies any allegations of intentional or reckless publication of the defamatory implication."). Nothing in the Court's "independent review" of the evidence indicated that SMP believed the Ad to be false.

Finally, even if Moore could prevail on *that* issue, numerous other issues would still prevent Moore from prevailing in this case, including that the record cannot sustain a finding of actual malice because the Ad was not materially false, *see* Appellant Br. at 47–50; Reply Br. at 20–22. Although the Court again did not reach this issue because Moore's failure to prove SMP's intent by clear and convincing evidence resolved the case, *see* Op. at 29 n.15, SMP showed that the gist of the Ad was true, *see* Reply Br. at 21–22. To the extent Moore believes it is material whether he solicited sex from a 14-year-old girl he picked up at the courthouse, *see* Opp'n Br. at 4, instead of a 14-year-old girl he approached at the mall, Moore cannot show that is a material difference that would have mattered in the minds of the average viewer. *See Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014) ("[A] materially false statement is one that would have a different effect on the mind of the reader or listener from that which the truth would have produced." (citation modified)).

In sum, because Moore's forthcoming petition presents no "substantial question," and because multiple, independent grounds exist to affirm the panel's judgment, the Supreme Court is not likely to grant certiorari in this case.

## II. Moore fails to demonstrate good cause for a stay.

Moore's motion should be denied on the independent ground that he fails to show a likelihood of irreparable harm, a prerequisite for a stay of the mandate. *See*

*Sockwell*, 2025 WL 2741439, at *1. A stay would also prejudice SMP, which is obligated to make significant bond premium payments while this case is on appeal.

### A. Moore will not be irreparably injured absent a stay.

Although Moore correctly identifies a need to show irreparable injury to be entitled to a stay of the mandate, *see* Mot. at 7–8, he fails to identify any such harm. Moore first points to an alleged "reputational harm" that he contends cannot be undone if the mandate issues in this case. But even if certain reputational harms could be irreparable under other circumstances (and Moore cites no case law supporting such a conclusion), Moore's argument that he will suffer reputational harm unless the mandate is stayed makes no sense here. There is little reason to believe, and Moore provides none, that Moore's public reputation will be harmed by the issuance of the *mandate*, rather than Moore's own behavior, the public reporting on which the Ad was based, or the Court's opinion itself, which has already received extensive media attention.[2]

---

[2] *See* Kayla Goggin, *Roy Moore's $8.2 million defamation award evaporates at 11th Circuit*, Courthouse News Serv. (Apr. 24, 2026), https://perma.cc/3SD4-4SDU; Josh Gerstein, *Appeals court overturns $8.2 million award to Roy Moore over Democratic PAC's ad*, Politico (Apr. 24, 2026), https://www.politico.com/news/2026/04/24/roy-moore-appeals-court-ruling-00890920; Chris Marr, *Roy Moore's $8 Million Defamation Award Reversed on Appeal*, Bloomberg L. News (Apr. 24, 2026), https://news.bloomberglaw.com/litigation/roy-moores-8-million-defamation-award-reversed-at-11th-circuit.

Moore's assertion that, "absent a stay, the district court will be directed to enter judgment for SMP and vacate the jury's $8.2 million verdict, an outcome that cannot be undone after the fact if the Supreme Court grants certiorari and reverses," Mot. at 8, is also plainly wrong. In the extremely unlikely event that the Supreme Court *did* grant certiorari in this case and *did* reverse this Court, and a remanded proceeding in fact resulted in a win for Moore, of course the district court would ultimately enter judgment for Moore. None of that is likely to happen, for the reasons SMP sets out above. But Moore is not correct that any such outcome would be precluded unless the mandate is stayed. Issuance of the mandate will not have any effect on Moore's ability to seek certiorari, or on the ability of the U.S. Supreme Court to grant his petition. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Flowers*, 330 U.S. 464, 467 (1947); *see also* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4036 (3d ed. Apr. 2026) ("[I]ssuance of the court of appeals mandate does not defeat the right to petition for certiorari.").

The only other harm Moore identifies in the absence of a stay is that he might be required to pay SMP's Bill of Costs, totaling approximately $3,000. *See* Mot. at 8. Notably, Moore does not actually claim that ordinary litigation costs constitute irreparable injury, and of course, they do not. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[M]oney, time and energy necessarily expended in the absence of a

stay[] are not enough.") (citation omitted); *Triangle Constr. & Maint. Corp. v. Our V.I. Lab. Union*, 425 F.3d 938, 947 n.8 (11th Cir. 2005) (similar).

Because a movant's failure alone to show a likelihood of irreparable harm, and consequently good cause, is sufficient to deny a request to stay the mandate, the Court should deny Moore's motion for this reason alone. *See Sockwell*, 2025 WL 2741439, at *1 (denying motion to stay mandate after evaluating only the movant's failure to show likelihood of irreparable harm).

**B.     A stay of the mandate will prejudice SMP and is not in the public interest.**

As Moore recognizes, before granting a stay, the Court should also consider whether a stay of the mandate would harm SMP. *See* Mot. at 7, 9. It would. Specifically, although SMP requested that the district court stay execution of the initial judgment pending appeal without requiring SMP to post a bond, Moore opposed that request, and the district court ultimately ordered SMP to post an $8.2 million bond. *See* Docs. 209, 215, 218. In the years since, SMP has had to pay an $82,000 premium on the bond each year, with its premiums now totaling over $320,000 since the bond was first put into place. Staying the mandate—which would likely prevent the district court from releasing the bond—will almost certainly require SMP to pay another $82,000 for 2026 (which it has not yet incurred for this year but likely *would incur* in the time that it would take for Moore to petition the U.S. Supreme Court and for the Court to deny that petition). Thus, Moore is wrong

18

to assert that SMP "loses nothing by waiting" for a judgment from the district court or that SMP has "no ongoing obligation" if the mandate does not issue. Mot. at 9. Although such harm is not necessarily *irreparable* to SMP in light of Moore's forthcoming obligation to pay SMP's bond premiums, *see* Fed. R. App. P. 39(f)(3), SMP does not need to show irreparable harm as the non-movant to show prejudice that counsels against granting a stay.

Finally, Moore also fails to show that a stay of the mandate is in the public interest. SMP disputes that the Court's opinion in this case has created "inconsistent constitutional rules for identical conduct depending solely on the federal circuit in which a case is litigated" in defamation-by-implication cases, Mot. at 10, as Moore argues. *See supra* Argument § I.A (demonstrating the lack of any circuit split on this issue). More generally, however, Moore fails to identify why *staying the mandate* in this case furthers the public interest, rather than identifying generic reasons why the Supreme Court ought to take this case. Whether or not the Supreme Court should "address the boundaries of Bose review," Mot. at 11, for example, is not a question that this Court would preclude by denying Moore's motion to stay the mandate. A stay is a limited and rare exception to the rule that the mandate issues as a matter of course; Moore identifies no reason the public (rather than Moore himself) would be served by a stay in this case.

**CONCLUSION**

For the reasons stated above, Moore's motion to stay the mandate pending the filing of a petition for certiorari should be denied.

Dated: June 1, 2026

Respectfully submitted,

*s/ Christina Ford*

Barry Alan Ragsdale
**Dominick Feld Hyde, PC**
1130 22nd St. South, Suite 400
Birmingham, AL 35205
Telephone: (205) 536-8888
bragsdale@dfhlaw.com

Marc E. Elias
Christina Ford
eliasm@elias.law
cford@elias.law
**Elias Law Group LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498

Abha Khanna
William B. Stafford
**Elias Law Group LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0176
akhanna@elias.law
bstafford@elias.law

*Attorneys for Appellant Senate
Majority PAC*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,873 words, excluding the parts that may be excluded. This response also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman.

Dated: June 1, 2026

*s/ Christina Ford*

**CERTIFICATE OF SERVICE**

I electronically filed this document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of docketing activity to all counsel of record.

Dated: June 1, 2026                                       *s/Christina Ford*